IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Logan McIntyre, William P Topping II, Randall Coaxum, Andrew Welch, Timothy Mitchum, Dakota Schmaltz, Ryan Jeffords, Robert Mullen, Simmons Martin, Christopher Frazier, Harry Griffin, Matt Lundell, Dawson Wilkins, Roland Ziegler, Paul Cobb, Larry David Gordan, Austin Ruddy, Macon Cooper Davis, Joseph Heuer, Brandon Shuey and Randall Smith, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SSA Cooper, LLC,<br><br>Defendant. | Civil Action No.: 2:18-cv-2150-DCN |

**JOINT MOTION FOR APPROVAL OF
COLLECTIVE ACTION SETTLEMENT AGREEMENT**

COME NOW the Parties to this action and respectfully request that the Court review the Parties' Final Global Settlement Agreement and Release ("Global Agreement") and enter an Order approving the Global Agreement as fair and reasonable.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On August 3, 2018, Plaintiff Logan McIntyre, on his own behalf and on behalf of other current and former SSA employees, filed a Complaint in the United States District Court for the District of South Carolina alleging that Defendant violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* by misclassifying them as salaried, exempt employees and failing to pay them overtime wages for hours worked in excess of forty in a workweek. (ECF No. 1).

1

On April 25, 2019, the Court conditionally certified the collective action. ECF No. 2. Prior to certification, the Parties engaged in extensive discovery, including several sets of written interrogatories and requests for production and conducted multiple depositions. On March 5, 2020, the Parties engaged in mediation with David McCormick. Mr. McCormick is experienced in mediating wage and hour collective actions. After extensive, separate, arms-length negotiations, and with the assistance of a professional third-party mediator, the Parties reached a settlement and subsequently executed the Global Agreement. *See* Exhibit A.

## II.     LEGAL ARGUMENT

It is well settled that court approval is required of all FLSA claims. *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). When employees bring a private action for back wages under the FLSA and present a proposed settlement to the District Court, the Court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See Lynn's Food Stores*, 679 F.2d at 1353. The factors to be considered in evaluating the fairness of an FLSA settlement include the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who has represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. *See*, *e.g.*, *Houston v. URS Corp.*, 2009 U. S. Dist. LEXIS 70151 (E.D. Va. 2009). The Parties believe that application of these factors confirms that their proposed settlement constituted a fair and reasonable compromise of a bona fide dispute.

Here, SSA's liability for overtime wages under the FLSA was vigorously disputed. SSA claimed that the members of the class were subject to the executive exemption of the FLSA and, therefore, not entitled to overtime. Plaintiffs maintained that they were not properly classified as exempt employees and were entitled to overtime pay for hours worked over forty in a given workweek. To avoid further expense litigating this case and the risks presented by a jury trial, as well as the possibility of appeals and post-trial motions, the Parties decided that settling was in their best interests. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as a strong indication of fairness). Prior to arriving at this conclusion, the Parties had engaged in discovery, including both written discovery and multiple depositions.

At all times during this case, Plaintiffs and Defendant have been fully and adequately represented by counsel with prior experience litigating overtime wage claims under the FLSA. Plaintiffs' Counsel Marybeth Mullaney has practiced in FLSA litigation representing employees for many years and has experience representing Plaintiffs in collective actions. Over the previous nine (9) years approximately eighty percent of her cases have involved FLSA litigation representing employees, the majority of which are collective actions. Additionally, Andrew Dunlap, who was admitted *Pro Hac Vice*, has significant experience representing employees in wage and hour collective actions, appearing as lead or co-counsel in over 500 class and collective actions, individual cases, and arbitrations seeking damages for unpaid overtime and wages based on allegations that employees worked off-the-clock, were misclassified as exempt or as independent contractors, or were the victims of regular rate and/or technical violations of both state and federal wage laws. Indeed, Josephson Dunlap, where he is a named partner, almost exclusively devotes its legal practice to challenging illegal wage and hour practices on behalf of

current and former employees. Likewise, Defendant's Counsel, Ben Glass, has significant experience in complex litigation in federal court, and regularly advises and defends employers in claims by employees in federal courts, including claims arising under the FLSA. Mr. Glass has litigated multiple FLSA collective actions over the past fifteen (15) years. Consequently, counsels' experience litigating FLSA claims weighs in favor of approving the settlement. The Parties have agreed to settle this dispute after reaching what they believe is a reasonable compromise over the disputed issues. The Parties believe that they have reached a fair and equitable resolution of this matter given the facts of this case and the legal issues involved.

    The proposed distribution to each Plaintiff is fair and equitable. The Plaintiffs' settlement allocation was computed based on a half-time measure of overtime damages[1], dates of employment within the two-year statute of limitations, and purported overtime worked during that same period. Plaintiffs' counsel calculated these numbers based on payroll and time records provided by Defendant, and Defendant accepted Plaintiffs' numbers despite them being higher than Defendant's calculations, and the availability of various arguments to further reduce the claimed damages. Plaintiffs have had the opportunity to consult with their counsel regarding the settlement and have reviewed and voluntarily approved both the Global Agreement and the settlement amounts they are to receive.

    Plaintiffs' counsel negotiated their fees and costs separately. Defendant does not oppose Plaintiffs' request for fees in the amount of $82,250.00 and costs in the amount of $9,053.59. *See* 29 U.S.C. § 216(b) contains fee-shifting provisions, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by

---

[1] In depositions, all but one of the employees who testified conceded that they understood they were salaried employees, and that their weekly pay was intended to cover all hours they worked in a given week.

the defendant, and costs of the action. There are two general methods for assessing awards of attorney's fees in class action cases: (1) the percentage-of-the-fund method and (2) the lodestar method. The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

The standard for determining a reasonable figure for attorney's fees is set forth in the familiar Fourth Circuit case of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978); *see* Local Civil Rule 54.02, D.S.C. (expressly incorporating the *Barber v. Kimbrell's, Inc.* factors):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) this skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226, n.28. The named Plaintiff agreed to a contingent fee arrangement with Plaintiffs' Counsel that would allow attorneys' fees in an amount equal to 35% of the gross amount of any recovery or the court-awarded fees, whichever is greater. However, Plaintiffs' Counsel has elected to ask the Court to award fees based upon the percentage-of-the-fund method. In this case two law firms were involved in the case and they collectively spent 260 hours between two named partners, Andrew W. Dunlap and Marybeth Mullaney, an associate attorney, Taylor A. Jones, and a senior paralegal.

The parties agreed to the amount of Plaintiffs' Counsels' fees after negotiation, and the basis of the fees is the reasonable hourly rate multiplied by the reasonable time spent working on the litigation, which is the same basis that the Court would use in determining a fee petition. As in

5

any case, there is always a risk that the Plaintiffs will not recover a verdict or might recover a verdict less than the full amount of damages sought. The contingency nature of the fee agreement puts a substantial risk of loss on Plaintiffs' Counsel, because they do not get paid unless they are successful in obtaining some recovery in the case on behalf of Plaintiffs. In situations like this case, where everyone's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties. Therefore, public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases. In addition, Plaintiffs' Counsel has advanced costs of this litigation, since Plaintiffs did not have the ability to pay the costs associated with this case. Counsel also declined to take other cases so they could focus on this litigation. For all the foregoing reasons, Plaintiffs respectfully request that the Court approve attorney's fees of $82,250.00 and costs of $9,053.59 to Plaintiffs' counsel based on the percentage-of-the-fund method. *See Savani v. URS Prof'l Sols*. LLC, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees.") (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998)); *Jones v. Dominion Res. Servs., Inc*., 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"). Further, some courts have suggested that the percentage

method with a cross-check against the lodestar method is ideal. *Hall v. Higher One Machines, Inc.*, 2016 U.S. Dist. LEXIS 131009, 2016 WL 5416582 at *7 (E.D.N.C. 2016) (quoting *Phillips v. Triad Guar., Inc.*, 2016 U.S. Dist. LEXIS 60950, 2016 WL 2636289 at *2 (M.D.N.C. 2016)) *Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 U.S. Dist. LEXIS 187007, at *14-15 (E.D. Va. Oct. 9, 2018)

### III.     TERMS OF SETTLEMENT

Defendant agrees to pay to Plaintiffs and their attorneys the total amount of Two Hundred and Thirty-Five Thousand ($235,000.00) in full satisfaction of all of Plaintiffs' claims, including attorneys' fees and costs. One Hundred and Forty-Three Thousand and Six Hundred Ninety-Six Dollars and Forty-One Cents ($143,696.41) will be distributed to the class. The attorneys' fees are Eighty-Two Thousand and Two Hundred and Fifty Dollars ($82,250.00) and the costs are Nine Thousand and Fifty-Three Dollars and Fifty-Nine Cents ($9,053.59). The amounts paid to each Plaintiff are set forth in the attached Exhibit B. The amounts herein will be paid to Plaintiffs' Counsel within twenty-one (21) days after the Court approves the parties' settlement and provided counsel for Defendant has received a signed copy of the Global Agreement from Named Plaintiff Logan McIntyre. Defendant agrees that Plaintiffs may file for Court Approval upon receiving Logan McIntyre's signature of the Global Agreement.

All payment to Plaintiffs will be apportioned as 50% as back pay, subject to withholdings and retirement contributions, and 50% as liquidated damages. This allocation is appropriate to maximize the amount of each Plaintiff's cash payout and to lessen the burden of withholdings for Social Security and Medicare for the Plaintiffs and Defendant. The proposed settlement figure of $235,000.00 is a fair settlement value in this case, because it allows for each Plaintiff to recover slightly over two years of overtime wages, given the unresolved legal and factual issues in the

case. The amount of settlement in relation to the potential recovery is reasonable in light of the strengths and weaknesses in the case.

The Global Agreement also provides for an incentive payment of Ten Thousand Dollars ($10,000.00) to the Named Plaintiff Logan McIntyre and Two Thousand and Five Hundred Dollars ($2,500.00) to Plaintiffs Austin Ruddy and Glen Frazier. This amount is proposed in relation to the scope of this individual's contribution to the litigation, as discussed below. "Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions." *DeWitt v. Darlington County*, Civil Action No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *7 (D.S.C. Dec. 6, 2013) (citing *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs) (unpublished); *Stevens v. Safeway, Inc.*, No. CV 05-01988 MMM (SHx), 2008 U.S. Dist. LEXIS 17119, at *1 (C.D. Cal. Feb. 25, 2008) (awarding incentive payments of $20,000 and $10,000 each to named Plaintiffs) (unpublished); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg On Class Actions § 11.38 at 11-80 that showed average incentive award to class representatives to be $16,000) (unpublished); *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case); *Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D N.Y. May 11, 2010) (approving $10,000 service awards to 7 named plaintiffs in hybrid class/collective action involving unpaid overtime) (unpublished); and *Hoffman v. First Student, Inc.*, 2010 WL

1176641, *3 (D. Md. Mar. 23, 2010) (affirming $3,000 service payments to seven lead plaintiffs in FLSA case).

Mr. McIntyre lent his name to the lawsuit, devoted substantial time to this case, and took a risk in serving as the driving force behind this litigation. He assisted with discovery responses, prepared for and sat for his deposition, participated in strategy discussions, communicated with counsel, and other class members. Although, Mr. McIntyre started a new job during this litigation, he made substantial efforts to stay informed and he even took time off work to meet with counsel and assist with this litigation. Thus, the incentive payment to Mr. McIntyre is reasonable and appropriate. Likewise, Plaintiff Austin Ruddy and Glen Frazier assisted with discovery responses, prepared for and sat for depositions. Defendant does not object to the incentive payments.

## IV.     CONCLUSION

For the reasons outlined above, the Parties have agreed to settle Plaintiffs' claims. The terms of the Parties' settlement include, but are not limited to the following:

1.     This matter concerns a claim by Plaintiffs that they are entitled to unpaid overtime wages under the FLSA.

2.     Defendant denies any liability to Plaintiffs.

3.     The Parties, through their counsel, reached a compromise to resolve this action, including attorneys' fees and costs for Plaintiffs' counsel, pursuant to the terms set forth in the Global Agreement. The Global Agreement provides that specific settlement amounts will be paid to Plaintiffs and a specific amount will be paid to their attorneys. The Global Agreement also includes a release of all claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable wage and hour state laws (including related common law claims) arising from the Plaintiffs' employment with Defendant.

4. The Parties agree that the Global Agreement represents a fair and equitable resolution and reasonable compromise. In the context of suits brought directly by employees against their employer under Section 216(b) to recover back wages for FLSA violations, the parties must present any proposed settlement to the District Court, which may enter a stipulated judgment after scrutinizing the settlement for fairness. *Lynn's Food Stores*, 679 F.2d at 1353.

5. Each Plaintiff understands the Global Agreement and its effect on his legal rights, supports the Global Agreement, and agrees to be bound by the Global Agreement.

6. The Global Agreement is in the best interest of all the Parties and has been accepted by the Parties. Plaintiffs and Defendant have executed the Global Agreement.

7. The Parties respectfully request that the Court approve the terms of the Global Agreement because it represents a fair and reasonable resolution of bona fide disputes over alleged unpaid overtime wages under the FLSA.

8. All Parties have been represented by competent counsel. Pursuant to Fed. R. Civ. P. 41(a)(1)(ii), the Parties hereby move that Plaintiffs' claims be dismissed with prejudice.

9. WHEREFORE, the Parties request that the Court review the Global Agreement and issue an Order approving the Global Agreement as fair and reasonable and enter judgment against SSA in the amount of $235, 000.00. A copy of the proposed order is attached.

*s/Benjamin P. Glass*
Benjamin P. Glass (Fed. I.D. No. 6522)
Piper R. Byzet (Fed. I.D. No. 11393)

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
211 King Street, Suite 200
Charleston, SC 29401
843.853.1300
843.853.9992 (fax)
ben.glass@ogletreedeakins.com
piper.byzet@ogletreedeakins.com

*Attorneys for Defendant*

*s/Marybeth Mullaney*
Marybeth Mullaney (Fed. I.D. No 11162)
Mullaney Law
652 Rutledge Ave Ste A
Charleston, SC 29403
P: (843) 588-5587
marybeth@mullaneylaw.net

Andrew W. Dunlap*
Taylor A. Jones*
Josephson Dunlap LLP,
11 Greenway Plaza, Suite 3050,
Houston Texas 77046
P: (713) 352-1100
adunlap@mybackwages.com
tjones@mybackwages.com
*Admitted Pro Hac Vice*

*Attorney for Plaintiffs*

11